908 So.2d 48 (2005)
STATE of Louisiana
v.
Bobbie J. STEVENSON.
No. 05-KA-52.
Court of Appeal of Louisiana, Fifth Circuit.
June 28, 2005.
*50 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Andrea F. Long, Roger Jordan, Assistant District Attorneys, Twenty-Fourth Judicial District, Parish of Jefferson, State of Louisiana, Gretna, LA, for Plaintiff/Appellee.
Pamela S. Moran, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges SOL GOTHARD, THOMAS F. DALEY, and MARION F. EDWARDS.
MARION F. EDWARDS, Judge.
Defendant, Bobbie Stevenson, appeals his conviction for sexual battery of a juvenile in violation of LSA-R.S. 14:43.1. Following arraignment and his plea of not guilty, Stevenson filed numerous pre-trial motions, including a Motion To Suppress Evidence and Confession. That motion was denied after a hearing, and Stevenson proceeded to trial before a jury of six persons. He was found guilty as charged and subsequently sentenced to serve ten years at hard labor. The State filed a multiple offender bill of information that alleged Stevenson to be a fourth felony offender. After Stevenson denied the allegations, the State filed a corrected version of the multiple offender bill, which still alleged Stevenson to be a fourth felony offender. Again, the allegations were denied. After a hearing, the trial judge adjudicated Stevenson a fourth felony offender, vacated the previous sentence, and sentenced him to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. This appeal follows.

FACTS
Both the victim and her mother are identified by their initials in order to protect *51 their identity, because the victim was a minor, and the victim of a sex crime.
MS. H. testified that, in November of 1999, she lived in a two-bedroom town-house at 4221 Lac Couture with her four children, one of whom was J.H. According to Ms. H., the victim was nine years old at the time and was mentally retarded. Ms. H. described J.H. as "brain dead at three months" old and said that J.H. was "very slow."
The townhouse where the family lived was small. J.H. slept in a daybed and Ms. H's two sons slept in bunk beds in the same bedroom. Ms. H. slept in the other bedroom with her youngest daughter, and a bathroom separated her room from that of the children.
Between one and two o'clock in the morning of November 13, 1999, Stevenson knocked on Ms. H.'s door. He asked to spend the night because he and some "guys had got into it." Ms. H., who was engaged to Stevenson's cousin, told him that he could spend the night on the sofa downstairs. According to Ms. H., Stevenson was drunk. However, Ms. H. testified she was able to carry on a conversation with him. Ms. H. testified that, at that time, she and the two older children, one of whom was the victim, were already downstairs eating, while the other children were upstairs sleeping. Stevenson asked for and got something to eat. After twenty or thirty minutes, Ms. H. and the children finished eating and went upstairs, while Stevenson remained downstairs. J.H. went downstairs to get a drink of water, and Ms. H. heard Stevenson telling her to go upstairs. J.H. came upstairs and Stevenson followed. J.H. returned to her bedroom, while Stevenson stopped by Ms. H.'s door to talk to her and then returned downstairs.
Between fifteen and twenty minutes later, Ms. H. was lying in her bed with the bedroom door closed when she heard Stevenson walk back upstairs. The phone rang, and Stevenson ran down to answer it. After a "good while," Stevenson came upstairs, but went down again to answer the doorbell. Ms. H. went to the top of the staircase and heard Stevenson speaking to another man whose voice she did not recognize. Stevenson then closed the door, and approximately twenty minutes later, came upstairs again.
According to Ms. H., she heard a belt buckle hit the floor. Stevenson shut the bathroom door and turned off the bathroom light, and Ms. H. thought he had come upstairs to use the bathroom. Then, within a couple of minutes, Ms. H. heard J.H.'s daybed squeaking, as if a person larger than J.H. had entered the bed. Ms. H. opened her bedroom door and ran into J.H.'s bedroom. When she turned on the light, Ms. H. saw Stevenson's pants on the floor. Stevenson was lying in the bed with J.H. and was naked from the waist down. J.H.'s shorts and underwear were at her knees. Stevenson was lying behind J.H. and his penis was "going between her legs." She could clearly see his penis was touching J.H.'s vagina. When Ms. H. asked Stevenson what he was doing, he replied, "It's not what you think."
Ms. H. grabbed Stevenson out of the bed and dragged him down the stairs. She kept his pants and underwear so that he could not leave and went next door, summoning her sister and her sister's boyfriend to keep Stevenson at the residence until the police arrived.
Although the State initially called J.H. as a witness, J.H. did not testify at trial. The record reflects that J.H. had difficulty determining her left hand from her right hand. After a few questions from the court, the prosecutor stated that the State would not call her as witness.
*52 Jefferson Parish Sheriff's Detective Debbie Labit testified that she interviewed Stevenson and took a taped statement from him. Detective Labit advised him of his constitutional rights and gave him a form to sign after going through it with him. She had no difficulty communicating with him, and he did not appear to be intoxicated. He clearly understood what was happening and did not request an attorney. In the statement, Stevenson initially said that he had been living at Ms. H.'s apartment for about eight months. He claimed that he watched her children while she went to work. Stevenson claimed that his clothes were in the closet in the room where J.H. slept and that he was getting some clothes out of the closet when J.H. rubbed up against him, grabbing his penis. Stevenson said that he told her to stop, but then pulled his pants down and got into bed with J.H., whom Stevenson claimed pulled down her own pants. He placed his penis between her legs but did not penetrate her. Stevenson claimed that, prior to the incident, he and another person had consumed approximately two quarts of beer over the course of one hour.
The tape and transcript of the statement were introduced into evidence and the tape was played for the jury at trial. Stevenson did not testify or present any evidence.
Stevenson contends that the evidence was insufficient to support his conviction because the State failed to prove that he was able to form the specific intent necessary to commit a sexual battery because of his intoxicated condition.
When the issues on appeal relate to both the sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence.[1]
The constitutional standard for testing the sufficiency of the evidence requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt.[2]
At the time of the offense in November of 1999, LSA-R.S. 14:43.1 defined sexual battery as follows:
A. Sexual battery is the intentional engaging in any of the following acts with another person, who is not the spouse of the offender, where the offender acts without the consent of the victim, or where the other person has not yet attained fifteen years of age and is at least three years younger than the offender:
(1) The touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender; or
(2) The touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim.
. . . .
Since the word "intentional" is included in the above definition of sexual battery without a qualifying provision, this Court has held that, under LSA-R.S. 14:11, only general criminal intent is required as an essential element of this crime.[3]

*53 General criminal intent is present when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences to follow his act. In other words, general criminal intent is shown by the very doing of the acts which have been declared criminal.[4]
Because sexual battery requires general, not specific criminal intent, Stevenson's argument that the State failed to prove specific intent is inapplicable.
Stevenson also contends that his intoxication was a defense to this crime. LSA R.S. 14:15(2) provides as follows regarding voluntary intoxication:
The fact of an intoxicated or drugged condition of the offender at the time of the commission of the crime is immaterial, except as follows:
. . . .
(2) Where the circumstances indicate that an intoxicated or drugged condition has precluded the presence of a specific criminal intent or of special knowledge required in a particular crime, this fact constitutes a defense to a prosecution for that crime.
However, voluntary intoxication can be a defense only in cases in which specific intent is a necessary element of the crime.[5] Accordingly, because sexual battery is a general intent crime, Stevenson's intoxication, or lack thereof, is not relevant in this sufficiency review.
Stevenson also contends the evidence was insufficient to prove the statutory elements because the State failed to prove that his penis or any part of his body touched the victim's anus or genitals. However, Ms. H.'s testimony established the requisite elements of the offense. She testified that Stevenson was naked from the waist down, lying in bed behind the victim. Ms. H. described what she saw defendant doing to the victim and that his penis was between J.H.'s legs. Ms. H.'s testimony was sufficient to establish that Stevenson's penis touched the victim's genitals. In addition, Stevenson's statement corroborated Ms. H's testimony. He said in his statement, which was played for the jury, that he had an erection and that he got "onto" the victim when she was lying on her stomach. Stevenson admitted that his penis was "right there by her vaginal area" when he lay down. Further, he said that his penis was against the victim's "anal area" when she was lying on her stomach. Stevenson stated that he did not try to put his penis inside of her, but that he "just went between her legs."
It is the role of the fact-finder to weigh the respective credibilities of the witnesses, and a reviewing court will not second-guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review.[6] Viewing the evidence in this case in the light most favorable to the prosecution, the State proved beyond a reasonable doubt that defendant committed sexual battery. This assignment of error has no merit.
Stevenson next argues that his inculpatory statement should have been suppressed because he was under the influence *54 of alcohol to such a degree that it rendered his statement involuntary. He contends his intoxication diminished his capacity to understand his rights and, therefore, he did not validly waive his rights.
Before an inculpatory statement, made during a custodial interrogation, may be introduced into evidence, the State must prove beyond a reasonable doubt that the defendant was first advised of his Miranda[7] rights and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducement or promises.[8] A determination of voluntariness is made on a case-by-case basis, depending on the facts and circumstances of each situation.[9] The admissibility of a confession or statement is a determination for the trial judge and his conclusions on the credibility and weight of the testimony relating to the voluntary nature of the confession or statement are entitled to great weight and will not be overturned unless unsupported by the evidence.[10]
Intoxication renders a confession involuntary when the intoxication is of such a degree as to negate the defendant's comprehension and to make him unconscious of the consequences of what he is saying.[11] Whether intoxication exists and is of a degree sufficient to vitiate the voluntariness of the confession are questions of fact and a trial judge's conclusions on this issue will not be disturbed unless unsupported by the evidence.[12] In determining whether the ruling on a defendant's motion to suppress is correct, an appellate court is not limited to the evidence adduced at the hearing on the motion to suppress but may also consider pertinent evidence given at the trial.[13]
According to the record, Stevenson was first advised of his rights at 4:18 a.m. by a deputy who responded to Ms. H.'s apartment. Sergeant Terry Graffeo of the Jefferson Parish Sheriff's Office also responded to Ms. H.'s apartment that morning. Sergeant Graffeo testified at the suppression hearing that he did not take a statement from Stevenson, but that Stevenson executed a consent form giving the police the authority to collect samples from his body for a rape kit. At that time, Sergeant Graffeo noticed that Stevenson had "a strong odor of alcohol on his breath" and that he was intoxicated. However, Sergeant Graffeo testified that he had no problems communicating with Stevenson and that he felt Stevenson comprehended what was going on. Because he accompanied the victim and her mother to the hospital, Sergeant Graffeo asked Detective Labit to interview Stevenson.
Detective Labit testified at the suppression hearing that Stevenson verbally indicted that he understood his rights and he signed the waiver of rights form acknowledging his comprehension of his rights. Detective Labit further testified that Stevenson never told her that he did not want to give the statement, or that he did not *55 understand what was going on. Rather, he was cooperative and never asked for an attorney. Moreover, she testified that she could not smell any alcohol on Stevenson. At trial, Detective Labit testified that she advised Stevenson of his constitutional rights at the Detective Bureau at 7:45 a.m. She stated that he was communicating with her clearly and that they had established a rapport. Detective Labit testified at both the suppression hearing and at trial that Stevenson did not appear to be intoxicated.
While it appears from all the evidence, including the testimony of Mrs. H., that Stevenson had consumed alcohol prior to the events in question, and prior to giving the statement, the testimony of Detective Labit establishes that he was able to communicate and to participate in a conversation with her. There is no indication in the record that any possible intoxication rendered Stevenson unconscious of the consequences of his statement. Accordingly, the trial judge did not abuse her discretion in denying the motion to suppress. This assignment of error has no merit.
Finally, Stevenson claims that his life sentence as a fourth felony offender is excessive because there is no indication that the trial court considered the factors in LSA-C.Cr.P. art. 894.1.
Stevenson did not make or file a motion to reconsider sentence. Rather, prior to sentencing, he orally objected that a mandatory life sentence would be excessive and asked the court to consider some leniency, although he did not state any particular basis for leniency. The failure to file a motion to reconsider sentence, or to state specific grounds upon which the motion is based, limits a defendant to a review of his sentence for constitutional excessiveness only.[14]
A defendant should be sentenced pursuant to the version of LSA-R.S. 15:529.1 in effect at the time of the commission of the charged offense.[15] When the instant offense was committed, LSA-R.S. 15:529.1(A)(1)(c)(ii) provided:
(ii) If the fourth or subsequent felony or any of the prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
Stevenson was found to be a fourth felony offender based on the underlying offense of sexual battery and predicate convictions of simple burglary in 1981, unauthorized entry of an inhabited dwelling in 1985, and aggravated burglary in 1988. The underlying offense of sexual battery and one of the predicate offenses, aggravated burglary, are crimes of violence. Accordingly, Stevenson was subject to a mandatory minimum habitual offender sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
Although the trial judge incorrectly applied the 2001 amended version of LSA-R.S. 15:529.1(A)(1)(c)(ii) when sentencing Stevenson as a fourth felony offender, a remand for re-sentencing under the correct version of the habitual offender law *56 would be an exercise in futility because a life sentence is mandatory in either case.
A mandatory minimum sentence under the Habitual Offender Law may still be reviewed for constitutional excessiveness.[16] A mandatory minimum sentence under the Habitual Offender Law is presumed to be constitutional.[17] In order to rebut the presumption of constitutionality, the defendant must clearly and convincingly show that he is "exceptional, which . . . means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances of the case."[18]
The trial court cannot impose whatever sentence it may feel is appropriate, but rather must impose the longest sentence that is not constitutionally excessive, with specific reasons to explain why that sentence is not constitutionally excessive.[19] Further, "[a] sentencing court should exercise its authority to declare excessive a minimum sentence mandated by the Habitual Offender Statute only under rare circumstances. . . ."[20] (Emphasis as found in the original.)
In the present case, two of the four felonies committed by Stevenson, who was forty years old at the time of the last felony in 1999, are defined as crimes of violence. LSA-R.S. 15:529.1 treats the defendant with multiple felony convictions as a recidivist who is to be punished for the instant crime in light of his continuing disregard for the laws of our state, subjected to a longer sentence because he continues to break the law.[21]
The record in this case reflects that Stevenson failed to produce any evidence to rebut the presumption of constitutionality of the minimum sentence.
This assignment of error is without merit.
The record was reviewed for errors patent, and we find none that require action or correction.
Accordingly, the conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] State v. Hearold, 603 So.2d 731, 734 (La. 1992).
[2] State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998) (citing Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).
[3] State in Interest of J.L., Jr., 592 So.2d 435, 438 (La.App. 5 Cir.1991), writ denied, 597 So.2d 1031 (La.1992).
[4] Id. (citing State v. Holmes, 388 So.2d 722, 727 (La.1980)).
[5] See, State v. Taylor, 01-452 (La.App. 5 Cir. 11/14/01), 802 So.2d 779, writ denied, 01-3326 (La.1/10/03), 834 So.2d 426.
[6] State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983). Accord, State v. Wallace, 00-1745 (La.App. 5 Cir. 5/16/01), 788 So.2d 578, 584, writ denied, 01-1849 (La.5/24/02), 816 So.2d 297.
[7] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[8] LSA-R.S. 15:451; State v. Quest, 00-205 (La.App. 5 Cir. 10/18/00), 772 So.2d 772, 780, writ denied, 00-3137 (La.11/2/01), 800 So.2d 866.
[9] Id.
[10] Id.
[11] State v. Watts, 98-1073 (La.App. 5 Cir. 5/19/99), 735 So.2d 866, 869.
[12] Id.
[13] State v. Higgins, 01-368 (La.App. 5 Cir. 10/17/01), 800 So.2d 918, 921, writ denied, 01-3267 (La.11/1/02), 828 So.2d 565, cert. denied, 538 U.S. 1038, 123 S.Ct. 2082, 155 L.Ed.2d 1070 (2003).
[14] State v. Pendelton, 00-1211 (La.App. 5 Cir. 3/14/01), 783 So.2d 459, 465, writ denied, 01-1242 (La.1/25/02), 807 So.2d 243.
[15] State v. Parker, 03-0924 (La.4/14/04), 871 So.2d 317, 326.
[16] State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672; State v. Dorthey, 623 So.2d 1276 (La.1993).
[17] State v. Johnson, supra; State v. Medious, 98-419 (La.App. 5 Cir. 11/25/98), 722 So.2d 1086, 1093, writ denied, 98-3201 (La.4/23/99), 742 So.2d 876.
[18] State v. Johnson, supra.
[19] State v. Johnson, supra.
[20] State v. Lindsey, 99-3256, 99-3302 (La.10/17/00), 770 So.2d 339, 345 cert. denied, 532 U.S. 1010, 121 S.Ct. 1739, 149 L.Ed.2d 663 (2001).
[21] See, State v. Johnson, supra.