FREDERICKA HOMBERG WICKER, Judge.
|2On October 25, 2011, this Court affirmed defendant’s conviction for sexual battery in violation of La. R.S. 14:43.1 but remanded the matter for a ruling on defendant’s previously filed motion to reconsider sentence. Defendant now appeals the trial court’s denial of that motion, claiming that his eight-year sentence is unconstitutionally excessive. We affirm.

Statement of the Case

On March 8, 2010, a six-person jury found defendant, Cesar Lobo, guilty of sexual battery in violation of La. R.S. 14:4s.!.[1] On March 18, 2010, the trial court sentenced defendant to eight years imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. On March 26, 2010, defendant filed a motion to reconsider sentence. Defendant appealed his conviction and sentence Land on October 25, 2011, this Court affirmed his conviction but remanded the matter to the trial court for a ruling on defendant’s outstanding motion to reconsider sentence. State v. Lobo, 11-51, pp. 2-3 (La.App. 5 Cir. 10/25/11), 77 So.3d 427, 430, writ denied, 11-2586 (La.3/30/12), 85 So.3d 117.
On October 31, 2011, the trial court denied defendant’s motion to reconsider sentence. On November 3, 2011, in a nunc pro tunc order, the trial court sentenced defendant to eight years imprisonment at hard labor without benefit of parole, probation or suspension of sentence. This timely appeal follows.[2]

Factual Background

The factual background developed at trial was provided in this Court’s previous opinion:
On June 6, 2009, the victim, A.R.[3], (born in Mexico), C.E., the victim’s boyfriend, (from Honduras), and Mr. Lobo, *1190 (Mr. C.E.’s uncle [sic][4]), agreed that they, along with others, attended a party at A.R. and C.E.’s Kenner apartment.
A.R. testified that day Mr. Lobo, his wife and his young daughter were pres-ente ] [a]long with Mr. Lobo’s sister, and his sister’s husband as well as a friend. According to A.R. and C.E., some of the other partygoers, including Mr. Lobo, began playing card games; however, A.R. (the victim) did not participate because she left the party to go to sleep. According to A.R., she left at 11:00 p.m.
It is undisputed that people were also drinking at the party. A.R. admitted that she drank “three daiquiri bottles” throughout the night, but she was not intoxicated. A.R. further explained that she slept in the dark with the light off, and a thick blanket she threw over the window to further |4darken the room. When she went to sleep for the night, she left her bedroom door open. A.R. stated that there was one upstairs and one downstairs bathroom and people at the party were using the upstairs bathroom throughout the night. In addition, she and C.E. testified that there was a bottle of liquor in the bedroom where she was asleep.
Subsequently, the victim woke with Mr. Lobo on top of her. Her pajamas were no longer on, her pants were down by her knees, and Mr. Lobo was “abusing [her].” She specifically stated that Mr. Lobo was “penetrating [her] vagina,” and that she was menstruating at the time. She further explained that she was sleeping “profoundly,” and she did not know why or when Mr. Lobo entered her room, or how long he was in the room before she awoke. When she felt someone kissing her, she initially thought it was her boyfriend, because he was the only person who enters her bedroom or touches her. But, she realized it was not her boyfriend when she touched his arm, because her boyfriend was wearing a short-sleeved shirt and Mr. Lobo was wearing a long-sleeved shirt. She then told Mr. Lobo he was not C.E. and threw him off of her. She testified that she had not given Mr. Lobo consent to touch her vagina.
C.E. testified that Mr. Lobo left the card table and went to the upstairs bathroom and later returned. Then, Mr. Lobo left the table again, without telling anyone where he was going. At some point, Mr. Lobo’s wife expressed concern about his whereabouts. L.L., (Mr. Lobo’s sister), D.D., (Mr. Lobo’s wife) and J.E.B. (Mr. Lobo’s brother-in-law) testified that they attended the party and Mr. Lobo was absent from the card game less than five minutes.
C.E. stated that when C.E. was looking for Mr. Lobo, C.E. heard a thump when he (C.E.) was walking towards the stairs. “[They] couldn’t find [Mr. Lobo] anywhere, and his car was still there, and [C.E.’s room] was the last place to look.”
| sA.R. and C.E. testified that C.E. came up the stairs, and opened the then locked bedroom door with a key. C.E. testified that when he entered the darkened bedroom and turned on the lights, he saw Mr. Lobo on the floor trying to pull up his pants, including his underwear. A.R. and C.E. stated that Mr. Lobo then said: “hit me, hit me.” In his statement to the police, Mr. Lobo admitted saying that and explained that he felt he had failed his uncle.
*1191 C.E. admitted that he did not see Mr. Lobo on top of the victim and he did not know what happened in the room before he walked in. C.E. threw Mr. Lobo out of the apartment.
A.R. testified that after the incident, C.E. placed the bedding sheets and A.R.’s clothes, which had blood on them, in a bag. A.R. and C.E. testified that, they did not call the police on the night of the incident because of family concerns. In addition, A.R. stated that she did not call immediately because everyone was blaming her. However, C.E. and A.R. stated that they went to two churches for help and thereafter called the police.
A.R. specifically testified that she did not give Mr. Lobo permission to touch her. The incident continues to affect her. C.E. testified that A.R. was in shock after the incident. A.R. testified that she fears the dark and now locks rooms within the apartment, something she never did before.
[[Image here]]
In his statement [to officers], Mr. Lobo admitted that he went into the darkened upstairs bedroom to get alcohol and he closed the door. He further stated that he got on top of A.R. and he kissed her. A.R. began unbuttoning his shirt and he started taking her shirt off. Then she started pulling his pants down. At this point, he was kissing her neck and everything. However, he denied that he had an erection or penetrated her. He thought that A.R. believed that he was A.R.’s boyfriend. However, |fiwhen he kissed her she stated that she thought he was C.E. and said “no, no.” She also started crying. At first Mr. Lobo said she pushed him but later he denied that she pushed him. Nevertheless he stated he fell. Since they were on the second floor, the others in the residence heard him fall. He had blood on his body somewhere below his belly button but above his penis from the menstruating victim. He also stated that his hand had blood on it possibly by his touching his stomach. When asked whether he penetrated her vagina, he replied: “Uh, not really because touching it. But not really. I did not penetrate.” Detective Hoffman testified that Mr. Lobo admitted that his penis and stomach area touched the victim’s vagina but that the penis never penetrated the vagina.
Lobo, 11-51, pp. 3-7 (La.App. 5 Cir. 10/25/11), 77 So.3d at 430-33.

Assignment of Error

Defendant claims that the eight-year sentence imposed by the trial judge is excessive and, thus, the trial court erred in denying his motion to reconsider sentence. Specifically, defendant claims the trial judge did not articulate its reasons for the sentence imposed and failed to comply with the mandate of La.C.Cr.P. art. 894.1. Defendant further complains that the facts of this case do not support his sentence, which is eighty percent of the maximum sentence allowed by law. Defendant states that the sentence imposed is excessive where defendant was a first-time offender, the case does not involve juvenile or multiple victims, and defendant used no severe physical violence against the victim.
The test for a reviewing court to determine if a sentence is excessive is a two-prong inquiry. First, the record must show that the trial court took cognizance of the criteria set forth in La.C.Cr.P. art. 894.1. Second, a constitutional inquiry as to the excessiveness of the sentence follows.
First, La.C.Cr.P. art. 894.1(C) requires the trial judge to state for the *1192 record the considerations taken into account and the factual basis when imposing a |7sentence. State v. Sanders, 98-855, p. 5 (La.App. 5 Cir. 5/19/99), 734 So.2d 1276, 1279, writ denied, 1999-1980 (La.1/7/00), 752 So.2d 175. The trial judge is not required to list every aggravating or mitigating circumstance applicable to the defendant as long as the record reflects that the trial judge adequately considered the guidelines of the article. The articulation of the factual basis for the sentence is the goal of the article, not rigid compliance with its provisions. Id. However, when there is an adequate factual basis for the sentence contained in the record, the trial court’s failure to articulate every circumstance listed in La.C.Cr.P. art. 894.1 does not require a remand for resentencing. Id; see also State v. Evans, 09-477 (La.App. 5 Cir. 12/29/09), 30 So.3d 958, 965-66, writ denied, 2010-0363 (La.3/25/11), 61 So.3d 653.
In this case, the trial judge did not articulate each circumstance contained in La.C.Cr.P. art. 894.1 when he imposed defendant’s sentence. However, the court did state that “a lesser sentence would decrease the severity of your (defendant’s) crime.” We find the trial judge sufficiently complied with the goal of La.C.Cr.P. art. 894.1 and set forth a factual basis for the sentence imposed. Further, the record fully supports the sentence imposed; thus, any potential error in the trial court’s failure to articulate each factor provided in La.C.Cr.P. art. 894.1 is harmless and would not require resentencing in this case.
Second, the Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Horne, 11-204, pp. 10-11 (La.App. 5 Cir. 2/14/12), 88 So.3d 562, 569, writ denied, 2012-0556 (La.6/1/12), 90 So.3d 437 and State v. Wickem, 99-1261, p. 10 (La.App. 5 Cir. 4/12/00), 759 So.2d 961, 968, writ denied, 2000-1371 (La.2/16/01), 785 So.2d 839. The trial judge is afforded broad discretion in sentencing and a reviewing court may not set aside a sentence for excessiveness if the record supports the sentence imposed. La.C.Cr.P. art. 881.4(D); State v. Berry, 08-151, p. 17 (La.App. 5 Cir. 6/19/08), 989 So.2d 120, 131, writ denied, 2008-1660 (La.4/3/09), 6 So.3d 767; and State v. Pearson, 07-332 (La.App. 5 Cir. 12/27/07), 975 So.2d 646, 656. The review of sentences under Louisiana Constitution Article 1, § 20 does not provide an appellate court with a vehicle for substituting its judgment for that of a trial judge as to what punishment is most appropriate in a given case. State v. Williams, 07-1111, p. 1 (La.12/7/07), 969 So.2d 1251, 1252 (per curiam) and State v. Hearn, 09-434 (La.App. 5 Cir. 12/29/09), 30 So.3d 873, 878. Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. State v. Woods, 09-399, p. 26 (La.App. 5 Cir. 3/9/10), 38 So.3d 391, 411, writ denied, 2010-0784 (La.10/29/10), 48 So.3d 1096.
In reviewing a sentence for exces-siveness, an appellate court must consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice. State v. Lobato, 603 So.2d 739, 751 (La.1992). On review, an appellate court does not determine whether another sentence might have been more appropriate, but whether the trial court abused its discretion. Pearson, 07-332, p. 15 (La.App. 5 Cir. 12/27/07), 975 So.2d at 656 and Horne, 11-204, p. 11 (La.App. 5 Cir. 2/14/12), 88 So.3d at 569.
*1193 At the time of the offense, La. R.S. 14:43.1(C)(1) provided: “Whoever commits the crime of sexual battery shall be punished by imprisonment, with or without hard labor, without benefit of parole, probation, or suspension of sentence, for not more than ten years.” Therefore, defendant’s eight-year sentence falls within the statutory limits provided by La. R.S. 14:43.1. However, the imposition |9of a sentence, although within the statutory limits, may still violate a defendant’s constitutional right against excessive punishment. State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1, 4. In considering whether the trial court abused its discretion in sentencing a defendant, a reviewing court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes by other courts. Horne, 11-204 (La.App. 5 Cir. 2/14/12), 88 So.3d at 569.
Concerning the first factor, the nature of the crime, the evidence presented at trial shows that defendant acted without provocation and took advantage of a sleeping woman in her own bed without her consent. The victim testified that defendant penetrated her vagina and that she never gave defendant permission to touch her. The incident continues to affect the victim, A.R., who testified that since the incident she now fears the dark and locks rooms within her apartment, something she never did before.
Next, regarding the nature and background of the offender, the record reflects that defendant has a criminal history. Prior to trial, the state filed a notice of intent to use evidence of other crimes. The state sought to introduce evidence that defendant was previously arrested for masturbating in the presence of a female citizen while operating a motor vehicle in violation of La. R.S. 14:106. Further, the sentencing transcript in the record reflects that — on the same date that defendant was sentenced for the instant offense — separate counsel appeared before the court on behalf of defendant to plead guilty to an unrelated offense. Prior criminal activity is one of the factors to be considered by the trial judge in sentencing a defendant. Prior criminal activity is not limited to convictions. State v. Brown, 03-581 (La.App. 5 Cir. 11/12/03), 861 So.2d 644, 654, writ denied, 2003-3407 (La.4/2/04), 869 So.2d 875 and writ denied sub nom. State ex rel. Brown v. State, 2004-0049 (La.4/2/04), 869 So.2d 877.
Finally, considering sentences imposed by other courts, the Second Circuit Court of Appeal has recently affirmed an eight-year sentence for a sexual battery conviction under facts similar to those presented in this case. In State v. Jones, 45,450 (La.App. 2 Cir. 8/11/10), 46 So.3d 711, the defendant and the victim, along with a group of friends, met at a bar for drinks. The victim became intoxicated and passed out. The group left the bar and went to a friend’s apartment; the victim at that time was still unconscious and was carried into a bedroom in the apartment. Later in the evening, another friend walked into the bedroom to retrieve something and witnessed the defendant having sex with the victim while she was still passed out.
After a jury trial, the defendant was found guilty of sexual battery[5] and sentenced to eight years imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. On appeal, the Second Circuit affirmed the defendant’s conviction and sentence. The court stated that the trial court, in sen- *1194 fencing the defendant, considered that he acted without provocation and caused severe emotional and actual harm to the victim. Further, although he was a first-time offender, if the defendant did in fact penetrate the victim’s vagina as claimed, then the defendant’s actions likely amounted to the higher charge of simple rape. Jones, 45,450 (La.App. 2 Cir. 8/11/10), 46 So.3d at 712-714.
Similarly, in the instant case, defendant acted without provocation by touching a sleeping woman in her own bed without her consent and caused actual and emotional harm to A.R. as reflected in her testimony. Further — if he did in |nfact penetrate A.R.’s vagina as she claimed in her testimony — defendant’s actions would rise to the higher charge of simple rape.
Considering the nature of defendant’s actions and the lifelong impact those actions will have on the victim, A.R., we find that the trial court did not abuse its discretion in imposing defendant’s eight-year sentence of imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. Therefore, we find the trial court did not abuse its discretion in denying defendant’s motion to reconsider sentence.

Errors Patent Review

In his original appeal, defendant received an errors patent review. In our October 25, 2011, opinion, this Court found minor errors patent, which were addressed by this Court. Defendant is not entitled to a second errors patent review of the matters encompassed in the first appeal. See State v. Taylor, 01-452, p. 10 (La.App. 5 Cir. 11/14/01), 802 So.2d 779, 783, writ denied, 01-3326 (La.1/10/03), 834 So.2d 426. He is limited to an errors patent review of the proceedings on remand. State v. Evans, 09-477 (La.App. 5 Cir. 12/29/09), 30 So.3d 958, 969, writ denied, 2010-0363 (La.3/25/11), 61 So.3d 653 and State v. Chisley, 06-900 (La.App. 5 Cir. 4/24/07), 957 So.2d 226, 229, writ denied, 07-1828 (La.6/6/08), 983 So.2d 911. The trial court’s record developed on remand following this Court’s October 25, 2011 opinion reveals no errors patent.

AFFIRMED

. The state initially charged defendant with simple rape in violation of La. R.S. 14:43; a few months before trial, the state amended the bill of information to charge defendant with sexual battery, a lesser charge.

. We held that after judgment on defendant’s outstanding motion to reconsider, defendant could re-lodge his appeal within a specified time. Lobo, 11-51, p. 18 (La.App. 5 Cir. 10/25/11), 77 So.3d at 438.

.In compliance with La. R.S. 46:1844, several names are replaced with initials to protect the victim’s identity.

. According to the record, Mr. Lobo is Mr. C.E.'s nephew, rather than his uncle as stated in the original opinion.

. The defendant in Jones was charged with simple rape; however, the jury returned a verdict of guilty of sexual battery, a lesser charge.