694 So.2d 435 (1997)
STATE of Louisiana
v.
Eric J. BROWN.
No. 96-KA-1002.
Court of Appeal of Louisiana, Fifth Circuit.
April 9, 1997.
*436 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Assistant District Attorney, Gretna, for plaintiff-appellee.
Laurie A. White, New Orleans, for defendant-appellant.
Before GAUDIN, DUFRESNE and CANNELLA, JJ.
GAUDIN Judge.
Eric J. Brown was indicted by a Grand Jury in Jefferson for first degree murder, LSA-R.S. 14:30, and armed robbery, LSA-R.S. 14:64. The first degree murder charge was later reduced by the state to second degree murder, LSA-R.S. 14:30.1. Following a four-day jury trial that started on April 30, 1996. Brown was convicted as charged on both counts. We affirm his conviction and also his sentences, life imprisonment for second degree murder and 30 years for armed robbery.
The crimes Brown was convicted of occurred on August 25, 1994 in Kenner, Louisiana. On that day, a woman named Valencia Peabody left her apartment for work leaving her boyfriend, Carmelo Salminen, asleep in the master bedroom and Brown, a friend of Salminen, asleep on a downstairs sofa. Brown had spent the night in the apartment.
When Peabody returned to the apartment during her lunch break, she noticed that Salminen's vehicle was gone. She went inside and found that Salminen had been shot and was dead.
Responding to Peabody's complaint, police officers arrived on the scene within minutes. They found the upstairs area of the apartment ransacked and they learned that various items were missing, including three guns, a briefcase, a safe and a tote bag. There were no signs of forced entry.
A neighbor, Ruth McKinnies, testified at trial that at approximately 9:00 a.m. she had observed Brown exit the apartment and drive Salminen's vehicle up to the front door. Brown then began loading the vehicle with items taken from the apartment.
Later that day, the police received a report that the briefcase had been located in a dumpster behind a Taco Bell shop at 3117 Loyola Avenue in Kenner. When the officers arrived there to retrieve the briefcase, they observed Salminen's vehicle nearby in the parking lot across from the apartment of Brown's sister.
Subsequently, a warrant for Brown's arrest was issued along with a search warrant for the apartment of his sister. While searching the apartment, officers found Brown hiding in a closet.
An autopsy revealed that Salminen was fatally shot in the back of the head at a distance ranging from two to five inches and that the time of death was between 8:49 and 10:49 a.m..
Following his convictions, Brown assigned on appeal these district court errors:
I. Appellant has been subjected to double jeopardy in violation of the Fifth Amendment to the United States Constitution and Article I, 15 of the Louisiana Constitution as he was tried and convicted of second degree murder with an underlying offense of armed robbery and armed robbery.
II. The appellant was denied his right to due process of law under the Fourteenth Amendment to the United States Constitution and Article I, § 2 of the Louisiana Constitution as there was insufficient evidence to support the verdict.
III. The verdict of guilty as charged of second degree murder must fail because it does not convey the intention of the jury under La. C.Cr.P. art 810 which violates appellant's due process rights as guaranteed by the Fourteenth Amendment to the *437 United States Constitution and Article I, § 2 of the Louisiana Constitution.
IV. The appellant was denied his right to a fair trial in violation of the Sixth Amendment to the United States Constitution and Article I, § 16 of the Louisiana Constitution.
V. Appellant requests review of the entire record for errors patent. LSA C.Cr.P. art 920(2).

ASSIGNMENT NO. 1
Citing State v. Marshall, 660 So.2d 819 (La.1995), Brown argues that he was subjected to double jeopardy because he was convicted of second degree murder with an underlying offense of armed robbery as well as armed robbery. In Marshall, the Louisiana Supreme Court held that double jeopardy is present when an accused is convicted of (1) attempted first degree murder with armed robbery the underlying felony and (2) the armed robbery.
Brown's case, however, is distinguishable from Marshall and similar jurisprudence.
In pertinent part, second degree murder is described as the killing of a human being:
(1) when the offender has a specific intent to kill or inflict great bodily harm, or
(2) when the offender is engaged in the perpetration or attempted perpetration of various listed crimes, including armed robbery. Specific intent to kill or inflict great bodily harm is not a requisite.
At the outset of Brown's trial, the state announced that it was proceeding under alternate theories of second degree murder, as described in (1) and (2) above.
The trial judge ably instructed the jury on both theories of second degree murder. Because one of the convictions was for armed robbery, Brown contends that armed robbery was necessarily the underlying offense for the second degree murder conviction.
The jury was not polled regarding this; however, Brown's two convictions can be upheld on appeal if there is sufficient evidence to support second degree murder as a specific intent crime. In State v. Vergo, 594 So.2d 1360 (La.App. 2 Cir.1992), writs denied at 598 So.2d 373 (La.1992), the court said this at page 1364:
"A jury is not constitutionally required to agree on a single theory to convict a defendant where it is instructed as to alternate theories. Schad v. Arizona, 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991), rehearing denied. Therefore, Vergo's conviction can be upheld if there is sufficient evidence based on any of the alternate theories with which the jury was charged."
Brown shot Salminen in the back of the head from two to five inches, a fact plainly indicating a specific intent to kill or inflict great bodily harm. The facts and circumstances of this killing, along with the trial judge's instructions on the elements and requirements of both sections of the second degree murder statute, as previously quoted, support a conviction under the specific intent section notwithstanding the inability of this Court to determine, from the cold record, the intent of the jury. The jury's intent, however, appears well expressed in and through its verdicts.
See also State v. Robinson, 598 So.2d 407 (La.App. 5 Cir.1992), in which this Court said at page 410:
"Discharging a firearm aimed directly at the victim is indicative of intent to kill or inflict great bodily harm."

ASSIGNMENT NO. 2
In this assignment of error, Brown contends that the evidence was insufficient to support his conviction for armed robbery because Salminen was shot and killed while he slept; thus, there was no proof that the elements of armed robbery were present. The elements of armed robbery are a taking of anything of value from the person of or in the immediate control of another by use of force or intimidation while armed with a dangerous weapon. Specifically, Brown argues that there is no evidence to show when Salminen was shot in relation to the taking and, further, there is no proof that force or intimidation, if any, was employed. It makes no difference, the Louisiana Supreme Court stated in State v. Meyers, 620 So.2d 1160 (La.1993); force or intimidation may be applied at any time in the course of the crime.
*438 Whether Salminen was killed before or after the taking is of no consequence. In State v. Meyers, supra, the Supreme Court noted that in bygone common law, the timing of the violence was important. For example, "... when one privately steals sixpence from the person of another, and afterwards keeps it by putting him in fear ...," larceny is present but not armed robbery. The Supreme Court then went on to state at pages 1162 and 1163:
"In modern times, however, many jurisdictions have analyzed these issues more expansively and have distinguished the crime of robbery from a larceny and a later assault, limiting the latter to cases in which the intimidation or force was not directly related to the taking. In an attempt to address society's fears over the danger of violence during a larceny, many courts have classified the larceny as a class of robbery `if the violence or intimidation is part of the res gestae of the larceny ...' Rollin M. Perkins, Criminal Law 349 (3d ed.1982). Under this view a robbery is committed, not only if the perpetrator uses force or intimidation to `take' possession of the property, but also if force or intimidation is used to retain possession immediately after the taking, or to carry away the property, or to facilitate escape. See Charles E. Torcia, 4 Wharton's Criminal Law § 478 (14th ed.1981).
"The Model Penal Code has adopted the position that a robbery occurs if the force or intimidation takes place `in the course of committing a theft,' specifying that the commission of a theft includes the flight after the attempt or commission. Mod. Pen.Code § 222.1(1). See also Perkins, supra, at 349 n. 43. The Model Code's approach focuses on whether the force or intimidation asserted against the victim is part of the entire act, and includes the use of force or intimidation to retain possession of the thing taken or to escape or prevent purusit."
The shooting of Salminen and the taking of things of value from him were part of the armed robbery's res gestae.

ASSIGNMENT NO. 3
In this assignment of error, Brown points out that the jury's verdicts do not precisely reveal whether or not he was convicted under second degree murder's specific intent section. For reasons previously stated under Assignment No. 1, this is not reversible error.

ASSIGNMENT NO. 4
Brown contends in this assignment of error that he was denied a fair trial. He gives four reasons:
(A) the trial judge referred to Brown's prior incarceration in the presence of the jury,
(B) the state was allowed to amend its discovery answers,
(C) the trial judge denied the defense's motion to poll the jury about a newspaper article published during trial, and
(D) the prejudicial in-court action of Valencia Peabody were intentionally provoked by the prosecutor.
Regarding (A) above, defense counsel did move for a mistrial on the second day of trial. On the first day of trial, the district judge had said that Brown had "... been incarcerated since the time of his arrest ..."
The trial judge denied the mistrial motion, saying that it should have been made the day before. The trial judge said:
"... I heard no objection yesterday when that was said by me and it would be ridiculous after selecting a jury and after hearing this lady's (Valencia Peabody) testimony to now ask for the mistrial. And that's why we have contemporaneous objections in Louisiana. You don't wait til [sic] we finish selecting a jury, then have the State put on one of its witnesses, and perhaps you don't like what one of its witnesses has to say, then you decide, oh well, maybe we out to move for a mistrial. That objection should have been made yesterday when the comment was made by this trial judge. It was not made. It was therefore waived because, evidently, it wasn't considered to be important."
The trial judge correctly denied the untimely motion for a mistrial.
*439 Regarding (B) above, the record indicates that after the jury had been selected, the state moved to formally amend its answers to discovery in order to reflect that it would be prosecuting both the specific intent and the felony murder theories of second degree murder. In support of his motion, the prosecutor noted that the original answers to discovery and the bill of particulars were in response to the original charge of first degree murder. Defense counsel objected to the amendment, and the trial court overruled the objection noting that Brown was not prejudiced by the amendment because the indictment had placed him on notice that the state was prosecuting him for murder and armed robbery.
Article I, § 13 of the Louisiana Constitution provides that in a criminal prosecution, an accused shall be informed of the nature and cause of the accusation against him.
The indictment here had been amended from first degree murder to second degree murder approximately five and a half months before trial. Although the amended indictment did not specify which provision of second degree murder the state was proceeding under, Brown had adequate time to prepare a defense against any and all sections of second degree murder. The amended answers presented nothing new or surprising and in no conceivable way prejudiced Brown in his defense preparation.
Regarding (C) above, Brown's attorney moved on the second day of trial to have the jury polled about a newspaper article concerning this case which had been published that morning. The trial judge denied the motion without giving reasons.
An examination of this record shows that at the outset of the trial, the jury was told to decide all questions on the evidence presented. At the end of the first day of trial, jurors were told by the trial judge to remember his instructions. In his charge, the trial judge again instructed the jury to determine facts "... only from the evidence presented..." and not on public opinion. This would, it seems, nullify any influence a newspaper article may have had even if read.
Moreover, the article in question was not proffered into evidence. Any possible prejudicial effect, therefore, cannot now be determined.
Regarding (D) above, Brown complains because Peabody was shown a photograph depicting Salminen in bed with blood draining from his nose and ears. She was asked to identify Salminen and the murder scene, to which she responded:
"Oh, Lord. Wait. Wait. Oh, God, please. Oh, Jesus. Oh, God, I got to get out of here! Wait a minute! Wait a minute! Please, Lord! Oh, Jesus!"
She then ran out of the courtroom, screaming. Defense counsel moved for a mistrial which was denied, the trial judge saying that "human emotion" cannot be excluded from trial. The prosecuting attorney said he wouldn't show any other photographs that might evoke "... any more emotion."
LSA-C.Cr.P. art. 775 provides:
"Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial..."
Whether a mistrial should be granted is within the sound discretion of the trial court, and denial of a motion for mistrial will not be disturbed on appeal absent an abuse of that discretion. The motion should be granted only where the defendant suffers such substantial prejudice that he has been deprived of any reasonable expectation of a fair trial. See State v. Smith, 433 So.2d 688 (La.1983).
It does not appear that the prosecutor intentionally provoked Peabody's reaction. Peabody had previously viewed other photographs of Salminen's body and she was able to maintain her composure.
After this disturbance, the trial judge ordered a recess. When the jury returned and questioning resumed, the trial judge told jurors not to be influenced by sympathy or passion. The denial of this mistrial motion was not an abuse of discretion.

*440 ASSIGNMENT NO. 5
The only error patent we found was the failure of the record to indicate that Brown was rearraigned on the amended charge of second degree murder. The record further does not show any objection. LSA-C.Cr.P. art. 555 states that if a defendant is tried without objecting to the fact that he or she was not arraigned, such error is deemed waived.
Brown's convictions and sentences are affirmed.
AFFIRMED.