GUIDRY, Justice.
b This case is before us on direct appeal from a judgment of the trial court declaring Act 749 of the 2010 Legislative Session unconstitutional.[1] Because we find the constitutional challenge is premature and presents no justiciable controversy, we reverse the ruling of the trial court.
FACTS AND PROCEDURAL HISTORY
During its 2010 Regular Session, the Louisiana Legislature enacted Act 749 (“the Act”), comprising La.Rev.Stat. 17:4041 through 17:4049, known as the “Red Tape Reduction and Local Empowerment Waiver Program.”[2] The Act authorizes the Board of Secondary and Elementary Education (“BESE”) to grant waivers exempting school districts and individual schools from complying with a number of statutes provided for in Title 17, the Education Code. Under the Act, a | ¡waiver cannot be presented to BESE “unless a majority of the classroom teachers employed in the school, voting by secret ballot, vote in favor of inclusion of such school in the waiver request.” La.Rev.Stat. 17:4043(A). At this point, no waiver has been granted under the Act, or even requested.
The Louisiana Federation of Teachers and others[3] (collectively “LFT”) filed a *762 petition for declaratory judgment against the State of Louisiana (“State”) and BESE, seeking a judgment declaring Act 749 unconstitutional. In particular, LFT sought to enjoin defendants from applying and enforcing La.Rev.Stat. 17:4041(7), et seq., which authorizes BESE to grant waivers as follows:
(7) “Waiver” means a waiver granted pursuant to and in accordance with this Chapter which exempts the recipient district from any provision of this Title or from any rule, regulation, or policy of the board that is applicable to public schools and to public school officers and employees....
LFT subsequently filed a motion for summary judgment asserting the Act was unconstitutional on numerous grounds.[4] The State and BESE opposed the motion, arguing the constitutional challenge was premature, LFT could not show the irreparable harm required to obtain injunctive relief, and Act 749 was not unconstitutional.
The trial court granted the motion for summary judgment in favor of LFT and declared Act 749 amounted to an unconstitutional delegation of authority. The trial court found Act 749 to be unconstitutional “to the extent that it delegated to |aBESE authority to grant waivers to governing authorities, as set forth in La.Rev.Stat. 17:4041 et seq., exempting any recipient district from any provision of Title 17 of the Louisiana Revised Statutes of 1950 that is applicable to public school[s] and to public school officers and employees.”
The State and BESE directly appealed to this court pursuant to La. Const. Art. V, § 5.
LAW AND DISCUSSION
This matter arises out of a petition for declaratory judgment filed by LFT seeking to have Act 749 declared unconstitutional. La.Code Civ. Proc. art. 1872 designates who can bring a declaratory judgment action by providing that a “person ... whose rights, status, or other legal relations are affected by statute ... may have determined any question of construction or validity arising under the ... statute ... and obtain a declaration of rights, status, or other legal relations thereunder.”
The State argues that LFT’s constitutional challenge is premature and presents no justiciable controversy. Pursuant to the subject statute, before a school district can apply for a waiver, the request must necessarily be approved by a majority of teachers, voting by secret ballot.[5] Even *763 then, BESE would not be \¿required to issue a waiver, as the statute only provides that BESE “may ... issue a waiver.” La.Rev.Stat. 17:4042.[6] (Emphasis added). At this point, no school district has applied to BESE for a waiver; thus,, according to the State, LFT is essentially seeking an advisory opinion. Further, the State contends the constitutional question is hypothetical or abstract because it is based on a contingency (i.e., a request for a waiver), which may not arise.
The jurisprudence of this court is well settled that, courts will not render advisory opinions. First Nat'l Bank of Picayune v. Pearl River Fabricators, Inc., 06-2195, p. 7 (La.11/16/07), 971 So.2d 302, 307. Cases submitted for adjudication must be justiciable, ripe for decision, and not brought prematurely. Prator v. Caddo Parish, 04-794, p. 5 (La.12/1/04), 888 So.2d 812, 815. For the reasons set forth below, we find that LFT’s action seeking to have Act 749 declared unconstitutional because it delegates legislative authority to BESE presents no justiciable controversy.
This court has previously discussed “justiciable controversy” relative to declaratory judgment actions. In Abbott v. Parker, we explained:
|SA “justiciable controversy” connotes, in the present sense, an existing actual and substantial dispute, as distinguished from one that is merely hypothetical or abstract, and a dispute which involves the legal relations of the parties who have real adverse interests, and upon which the judgment of the court may effectively operate through a decree of conclusive character. Further, the plaintiff should have a legally protecta-ble and tangible interest at stake, and the dispute presented should be of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.
259 La. 279, 249 So.2d 908, 918 (1971); see also, Prator, pp. 5-7, 888 So.2d at 815-817. A court must refuse to entertain an action for a declaration of rights if the issue presented is academic, theoretical, or based on a contingency which may or may not arise. American Waste & Pollution Control Co. v. St. Martin Parish Police Jury, 627 So.2d 158, 162 (La.1993). Further, a case is not ripe for review unless it raises more than a generalized, speculative fear of unconstitutional action. State v. Rochon, p. 7, 11-0009 (La.10/25/11), 75 So.3d 876, 882.
In addition to our jurisprudence, the United States Supreme Court has provided further guidance on the justiciability of an action and has held a court may review a statute prior to enforcement if: (1) the issues are fit for judicial decision; and (2) the parties will suffer hardship if the court *764 withholds consideration. See Nat’l Park Hospitality Ass’n v. Dep’t of Interior, 538 U.S. 803, 808, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003) (citing Abbott Labs. v. Gardner, 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). In the case before us, no waivers have yet been sought, much less granted; thus, LFT cannot point to any particularized harm directly resulting from a waiver.
A “hardship” occurs where the law produces “adverse effects of a strictly legal kind.” Nat’l Park Hospitality Ass’n, 538 U.S. at 809, 123 S.Ct. 2026. The Supreme Court has found a hardship exists where a law affects a party’s “primary conduct” and is “ ‘felt immediately by those subject to it in conducting their day-to-day affairs.’ ” | Jd.; Reno v. Catholic Soc. Servs. Inc., 509 U.S. 43, 58, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993) (quoting Toilet Goods Ass’n, Inc. v. Gardner, 387 U.S. 158, 164, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967)).
In the instant case, the subject statute does not create a hardship for LFT requiring pre-enforcement review. If a claim depends on “contingent future events that may not occur as anticipated, or indeed may not occur at all,” then it is not ripe for adjudication. Texas v. United States, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998) (quoting Thomas v. Union Carbide Agricultural Products Co., 473 U.S. 568, 580-581, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985)). Currently, no waivers have been applied for or granted under the subject statute. Prior to submitting a waiver request, a majority of school teachers, voting by secret ballot, must approve the waiver. La.Rev.Stat. 17:4043. Thereafter, the statute allows, but does not mandate, BESE to grant the waiver. La.Rev. Stat. 17:4042. Thus, enforcement of the law is far from certain. Cf Texas, 523 U.S. at 300-01, 118 S.Ct. 1257 (question of whether appointing a magistrate to oversee school districts required preclearance under the Voting Rights Act was not ripe as no magistrate had been appointed and would only be appointed as a last resort).
LFT is not “required to engage in, or to refrain from, any conduct, unless and until” a group of teachers approves, by majority vote, a waiver request and BESE grants that request. Id. at 301, 118 S.Ct. 1257. As such, the statute does not have an immediate impact on LFT members’ day-to-day conduct and “no irremediably adverse consequences [would flow] from requiring a later challenge” if and when a waiver is granted under the subject statute. Reno, 509 U.S. at 58, 113 S.Ct. 2485. Accordingly, this is not a case where LFT must face the immediate dilemma of complying with a law or risking penalties or where enforcement of the law is certain.[7]
^Furthermore, this court’s jurisprudence has recognized that, when asked to declare legislation unconstitutional, a court must examine whether the legislation is permissive or mandatory. American Waste & Pollution Control Co., 627 So.2d at 162-163 (La.1993), citing Stoddard v. City of New Orleans, 246 La. 417, 165 So.2d 9, 11 (1964). Mandatory legislation requires a governmental agency to act while permissive legislation allows an agency to act. See Id. (providing an example of permissive zoning legislation).[8] This court has explained that, when legislation is permissive and a governmental agency *765 has not implemented or threatened to implement the legislation, there is no justicia-ble controversy, and courts must refrain from deciding the constitutionality of the legislation. See American Waste & Pollution Control Co., 627 So.2d at 163.
In the instant case, Act 749 is permissive because it allows, but does not require, BESE to issue waivers. La.Rev. Stat. 17:4042 states that BESE “may ... issue a waiver.” (Emphasis added). Similarly, nothing requires a governing authority to request a waiver. See La.Rev.Stat. 17:4043(A) (“A governing authority may request a waiver.”). (Emphasis added). In addition, a governing authority cannot request a waiver “unless a majority of the classroom teachers employed in the school, voting by secret ballot, vote in favor of inclusion of such school in the waiver request.” Id.
A permissive statute must be rendered operative or threatened to be rendered operative prior to being challenged. American Waste & Pollution Control Co., 627 So.2d at 163. As explained above, Act 749 is a permissive statute. No school district has applied to BESE for a waiver under the Act and as a result, BESE has yet to implement a waiver under that Act. Therefore, it follows that LFT’s lawsuit 1 ^contesting the constitutionality of Act 749 is premature.
CONCLUSION
The instant ease presents no justiciable controversy currently amenable to resolution by this court. LFT has failed to demonstrate any real hardship requiring pre-enforcement review of the statute. It is not certain that a waiver will be requested or granted under the statute, and LFT will not be harmed by declining review of the statute at this point in time. Therefore, we reverse the decision of the trial court declaring La.Rev.Stat. 17:4041, et. seq. unconstitutional.
REVERSED.
JOHNSON, Justice, dissents and assigns reasons.

.La. Const, art. V, § 5(D) provides, in pertinent part: a case shall be appealable to the supreme court if (1) a law or ordinance has been declared unconstitutional.

. Act 749 was originally enacted as La.Rev. Stat. 17:4031, et seq., and was later redesig-nated as La.Rev.Stat. 17:4041, et seq.

. The Petition for Declaratory Judgment was filed by Louisiana Federation of Teachers, East Baton Rouge Federation of Teachers, *762 Jefferson Federation of Teachers, Vernon L. Bolden, Venice Gunner-Holiday, Teri Ann Johnson, and Rachel Rasbery.

. LFT argued Act 749 was unconstitutional in the following respects:
(1) It improperly delegates legislative authority to BESE in violation of La. Const, art. II, § 1 and § 2;
(2) It is a prohibited local or special law in violation of La. Const, art. Ill, § 12; further, LFT complained the State enacted Act 749 without publication of a Notice of Intent as required under La. Const, art. Ill, § 13;
(3) It violates constitutional requirements of due process and equal protection; and
(4)It allows BESE to suspend a law in violation of La. Const, art. Ill, § 20.

. La.Rev.Stat. 17:4043, "Requests for waivers," provides in part:
A. A governing authority may request a waiver for any school, any combination of schools, or all schools under his district's jurisdiction. However, a governing authority shall not request a waiver for any school unless a majority of the classroom teachers employed in the school, voting by secret ballot, vote in favor of inclusion of such school in the waiver request. (Emphasis added).
B. A governing authority requesting a waiver shall submit to the board a written waiver request that does all of the following:
*763 (1) Identifies the specific laws, rules, regulations, and policies from which waiver is sought.
(2) Identifies the school or schools that will be covered by the waiver.
(3) Describes the policies and procedures that will be instituted as a substitute for the waived provisions.
(4) Describes how the proposed waiver will accomplish all of the following:
(a) Increase the quality of instruction for students.
(b) Improve the academic achievement of students.
(c) Improve teaching effectiveness within schools.
(5)Describes, for each school year, specific, measurable educational goals and the methods to be used annually to measure progress in meeting such goals.
[[Image here]]

. La.Rev.Stat. 17:4042, entitled "Authority of the board to grant waivers,” states:
Notwithstanding any provision of law to the contrary, the board may, upon receipt of a waiver application from a governing authority as set forth in this Chapter and with the goal of improving quality of instruction and student academic achievement, issue a waiver to any district. (Emphasis added).

. Reno, 509 U.S. at 57, 113 S.Ct. 2485; see also, Abbott Labs., 387 U.S. at 152-53, 87 S.Ct. 1507 (plaintiffs action challenging a regulation that required manufacturers to change their labels and advertisements or face sanctions was ripe for review).

. See Louisiana Associated General Contractors, Inc. v. State, Division of Admin., Office of State Purchasing, 95-2105 (La.3/8/96), 669 So.2d 1185, 1195 (for an example of mandatory legislation).