STATE OF LOUISIANA

VERSUS

ERIC J. BROWN

NO. 19-KA-370

C/W

19-KH-374

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 94-5632, DIVISION "M"
HONORABLE HENRY G. SULLIVAN, JR., JUDGE PRESIDING


January 15, 2020


**FREDERICKA HOMBERG WICKER**
**JUDGE**


Panel composed of Judges Fredericka Homberg Wicker,
Marc E. Johnson, and Stephen J. Windhorst


<u>**AFFIRMED**</u>

**FHW**

**MEJ**

**SJW**

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
     Paul D. Connick, Jr.
     Thomas J. Butler
     Andrea F. Long
     Matthew R. Clauss

COUNSEL FOR DEFENDANT/APPELLANT,
ERIC J. BROWN
     Christopher A. Aberle

**WICKER, J.**

This is appellant Eric Brown's second appeal of his May 1996 conviction by a non-unanimous jury by a vote of ten to two for second-degree murder (count one) and armed robbery (count two), committed in 1994 when he was sixteen years old, and for which he received, respectively, concurrent sentences of life and thirty-years imprisonment at hard labor, neither with benefit of parole, probation, or suspension of sentence. Mr. Brown's first appeal immediately followed his trial. This court affirmed his convictions and sentences in April of 1997. *State v. Brown*, 96-1002 (La. App. 5 Cir. 4/9/97), 694 So.2d 435, *writ denied*, 97-1310 (La. 10/31/97), 703 So.2d 19. The Louisiana Supreme Court's denial of his writ later that year finalized his convictions and sentences. Thereafter, pursuant to the United States Supreme Court's 2015 decision in *Montgomery v. Louisiana*, — U.S. —, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016), however, the Louisiana Supreme Court granted Mr. Brown's "Motion to Correct an Illegal Sentence" and remanded his case to the trial court for a "*Miller* hearing,"[1] held on July 2, 2018. The trial court, accordingly, cured Mr. Brown's life sentence for second degree murder to comport with *Miller* by rendering him parole eligible. The court again withheld such benefit as to his thirty-year sentence for armed robbery.

Mr. Brown now appeals that revised life sentence, but assigns no specific error as grounds for its reversal. His instant appeal's primary purpose, rather, appears to be an attempt to position his case as one still pending on direct appeal when the United States Supreme Court ultimately renders its forthcoming decision in *Ramos v. Louisiana*, — U.S. —, 139 S.Ct. 1318, 203 L.Ed.2d 563 (2019), likely early in Spring 2020. Should the *Ramos* court rule that the Fourteenth Amendment fully incorporates the Sixth Amendment's guarantee of a unanimous jury—such

---

[1] Routine hearings now held to comport with the U.S. Supreme Court's ruling in *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012).

that any state court conviction by a non-unanimous jury, like Mr. Brown's, would be unconstitutional—Mr. Brown asserts that he would then be automatically entitled to a retrial of his case, given that his case "is still pending on direct review and not yet final."

For the following reasons, however, we affirm his convictions' finality. Issues related to his conviction are not properly before this court on the instant appeal, given that all such issues already have or should have been heard during his first appeal. This current appeal's sole focus is issues relevant to his resentencing. Since Mr. Brown raises no such issues, we affirm his sentences as well. Thus, even should *Ramos* be decided prior to rendition of this opinion, Mr. Brown would not be entitled to automatic and immediate application of any new favorable rule, but instead will have to seek such benefit via collateral review, assuming the rule is indeed retroactive. Finally, we decline to opine as to whether a ruling in *Ramos* declaring non-unanimous verdicts unconstitutional would be among those "watershed rules of criminal procedure" warranting retroactive applicability under the *Teague* framework.[2] Doing so would amount to an inappropriate advisory opinion.

**Factual Background**

The facts of this case were previously set forth in *Brown*, 694 So.2d at 436:

The crimes Brown was convicted of occurred on August 25, 1994 in Kenner, Louisiana. On that day, a woman named Valencia Peabody left her apartment for work leaving her boyfriend, Carmelo Salminen, asleep in the master bedroom and Brown, a friend of Salminen, asleep on a downstairs sofa. Brown had spent the night in the apartment.

When Peabody returned to the apartment during her lunch break, she noticed that Salminen's vehicle was gone. She went inside and found that Salminen had been shot and was dead.

---

[2] The U.S. Supreme Court's decision in *Teague v. Lane*, 489 U.S. 288 (1989), provides the modern framework governing retroactivity—that is, whether a decision announcing a "new" rule of constitutional law applies to defendants who were convicted before the rule's articulation.

Responding to Peabody's complaint, police officers arrived on the scene within minutes. They found the upstairs area of the apartment ransacked and they learned that various items were missing, including three guns, a briefcase, a safe and a tote bag. There were no signs of forced entry.

A neighbor, Ruth McKinnies, testified at trial that at approximately 9:00 a.m. she had observed Brown exit the apartment and drive Salminen's vehicle up to the front door. Brown then began loading the vehicle with items taken from the apartment.

Later that day, the police received a report that the briefcase had been located in a dumpster behind a Taco Bell shop at 3117 Loyola Avenue in Kenner. When the officers arrived there to retrieve the briefcase, they observed Salminen's vehicle nearby in the parking lot across from the apartment of Brown's sister.

Subsequently, a warrant for Brown's arrest was issued along with a search warrant for the apartment of his sister. While searching the apartment, officers found Brown hiding in a closet.

An autopsy revealed that Salminen was fatally shot in the back of the head at a distance ranging from two to five inches and that the time of death was between 8:49 and 10:49 a.m.

**Procedural History**

As stated, this is Mr. Brown's second appeal. This appeal has been consolidated with pending writ application 19-KH-374, *State v. Brown*. On October 6, 1994, a Jefferson Parish Grand Jury returned an indictment charging defendant, Eric J. Brown, with first-degree murder in violation of La. R.S. 14:30 ("count one"), and armed robbery in violation of La. R.S. 14:64 ("count two"). On November 6, 1995, the State amended count one to second-degree murder in violation of La. R.S. 14:30.1.

Following a four-day jury trial that started on April 30, 1996, Mr. Brown was convicted as charged on both counts. Mr. Brown was sentenced to life imprisonment without the benefit of parole, probation, or suspension of sentence on count one, and thirty years imprisonment at hard labor without the benefit of

parole, probation, or suspension of sentence on count two, to run concurrently. On his first appeal, this Court affirmed Mr. Brown's convictions and sentences.[3] On October 31, 1997, the Louisiana Supreme Court denied writs. In the years that followed, Mr. Brown sought post-conviction relief with this and other courts, none of which were granted.

On September 11, 2012, in light of the United States Supreme Court's decision earlier that year in *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), Mr. Brown filed a "Motion to Correct Illegal Sentence" arguing that his original life sentence without parole on count one for second-degree murder was illegal given that he was a minor at the time of his crimes' commission. Mr. Brown's date of birth is May 19, 1978. Therefore, at the time of the offenses on August 25, 1994, he was sixteen years old.

On May 1, 2015, the trial court denied Mr. Brown's motion, relying on the Louisiana Supreme Court's decision in *State v. Tate*, 12-2763 (La. 11/5/13), 130 So.3d 829, but noting that the U.S. Supreme Court had granted certiorari in *State v. Montgomery*, 13-1163 (La. 6/20/14), 141 So.3d 264. Mr. Brown thereafter sought relief with this Court, which we denied. *State v. Brown*, 15-395 (La. App. 5 Cir. 7/8/15) (unpublished writ disposition).

In 2016, Mr. Brown continued to seek resentencing under *Miller*, and he also sought relief with the Louisiana Supreme Court challenging this Court's writ decision. That same year, the United States Supreme Court decided *Montgomery v. Louisiana*, — U.S. —, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016). As such, the

---

[3] Mr. Brown raised five assignments of error. Mr. Brown argued: (1) his convictions subjected him to double jeopardy; (2) the evidence was insufficient to support his conviction of armed robbery, (3) the jury's verdicts were invalid because they failed to indicate whether he was convicted under second degree murder's specific intent section; (4) he was denied a fair trial; and (5) he was not rearraigned on the amended charge of second-degree murder. *Brown*, *supra*.

Louisiana Supreme Court, in *State ex rel. Brown v. State*, 15-1405 (La. 9/23/16), 200 So.3d 345 (*per curiam*), ordered:

> Writ granted; case remanded. In light of the Supreme Court's holding in *Montgomery v. Louisiana* [citation omitted] that *Miller v. Alabama* [citation omitted] announced a substantive rule of constitutional law that applies retroactively, we remand the case to the 24th Judicial District Court for further proceedings consistent with the views expressed in *State v. Montgomery* [citation omitted], and for resentencing pursuant to La.C.Cr.P. art. 878.1.

In compliance with the Louisiana Supreme Court's directive, on July 2, 2018, the trial court held a *Miller* hearing, and the hearing was left open for the filing of post-hearing memoranda. On October 11, 2018, the trial court vacated Mr. Brown's sentences and resentenced him to "life in prison with benefit of parole" on count one for second-degree murder. It also reimposed the thirty-year sentence at hard labor without the benefit of probation, parole, or suspension of sentence on count two for armed robbery. The sentences were ordered to run concurrently with each other.

On January 31, 2019, Mr. Brown filed a "Notice of Appeal," challenging his life sentence with parole eligibility, and also a motion to reconsider his life sentence. On February 4, 2019, the trial court granted Mr. Brown an out-of-time appeal.[4] Also on February 4, 2019, the trial court denied Mr. Brown's motion to reconsider his life sentence.

Subsequent to the granting of the order of appeal, on March 19, 2019, Mr. Brown, *pro se*, filed a Uniform Application for Post-Conviction Relief. On March 20, 2019, the trial court dismissed Mr. Brown's application without prejudice,

---

[4] The trial court pointed out in a handwritten order that defense counsel had previously made an oral motion for appeal in court at sentencing and indicated that she had mailed a written notice of intent to the Clerk of Court within thirty days from sentencing. It also pointed out that although the Clerk of Court did not have a record of receiving the mailing, the State acknowledged that it received a timely copy.

finding that the application was premature, and that it had been divested of jurisdiction to rule upon the application upon the entering of the order of appeal.

On August 6, 2019, Mr. Brown filed a writ application with this Court (19-KH-374). Due to Mr. Brown's constitutional challenge to La. Const. Art. 1, § 17 and La. C.Cr.P. art. 782, the Louisiana Attorney General's Office was notified of the writ application's filing. On September 17, 2019, the Attorney General's Office filed an opposition to the writ, arguing that the trial court correctly declined to address the merits of Mr. Brown's premature application, and therefore that Mr. Brown's writ should be denied since he only argued the merits of the constitutional challenge without addressing the jurisdictional issue.

On October 9, 2019, the writ panel in 19-KH-374 found the issues raised in this appeal and the writ were interrelated and arose out of the same district court case. Accordingly, the writ panel issued an order consolidating the writ with the instant appeal for docketing and oral argument and referring the matters to the appeal panel for resolution.

Mr. Brown assigns no actual error to the trial court's new sentence, nor does he seek its reversal. He appeals it, rather, solely in anticipation of the United States Supreme Court's forthcoming decision in *Ramos v. Louisiana*, — U.S. —, 139 S.Ct. 1318, 203 L.Ed.2d 563 (2019), wherein the Court is poised to rule on the constitutionality of criminal convictions by non-unanimous juries, like his. The Court heard oral arguments in *Ramos* on October 7, 2019. This would place the likely date of the decision's ultimate rendition sometime in Spring 2020.[5]

---

[5] *See* Lee Epstein, William M. Landes, and Richard A. Posner, THE BEST FOR LAST: THE TIMING OF U.S. SUPREME COURT DECISIONS, 64 Duke L.J. 991, 1022 (2015) (specifically at footnote 5, finding that the "mean time from oral argument to decision in the 7219 sample is 83.6 days (the median is 75), with a standard deviation of 46.2.").

**Discussion**

Mr. Brown asserts, as his sole "assignment of error," simply that his "convictions are not yet final" in light of his case now being on direct appeal of his *Miller* resentencing, and as such avers that he would entitled to "any benefit" from *Ramos'* forthcoming decision, should it be favorable. Though Mr. Brown concedes that we did indeed affirm his convictions twenty-two years ago upon his first appeal, he nonetheless urges that his *Miller* resentencing has resituated him among the class of defendants who—should *Ramos* be issued while their cases await adjudication on direct appeal—would immediately stand to benefit from a favorable ruling holding their convictions by non-unanimous verdicts violates the Sixth Amendment. The record of Mr. Brown's first appeal indicates that the jury was polled after returning its verdicts. The trial judge stated:

> A polling of this jury indicates that this is a 10/2 verdict
> for guilty of second-degree murder on Count 1, armed
> robbery on Count 2—all counsel have had an opportunity
> to review these written forms. Is that correct?

The parties answered affirmatively. Therefore, Mr. Brown seems to have at least had standing to challenge both verdicts' constitutionality on the basis of their non-unanimity. *See State v. Jacobs*, 07-887 (La. App. 5 Cir. 5/24/11), 67 So.3d 535, 545-46, *writ denied*, 11-1753 (La. 2/10/12), 80 So.3d 468, *cert. denied*, 568 U.S. 838, 133 S.Ct. 139, 184 L.Ed.2d 67 (2012). Though he neither raised nor preserved such a challenge at trial, Mr. Brown further argues that he nonetheless would not be procedurally barred from benefiting from a favorable ruling in *Ramos*, in that such a ruling would make the illegality of his non-unanimous verdicts "discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence," i.e. part of this Court's "error patent" review.

The State opposes Mr. Brown's appeal by characterizing it as essentially a request for an advisory opinion, which he predicates upon a contingency. The

State urges that Mr. Brown's current appeal should be limited in scope only to matters of his resentencing, and that Mr. Brown does not raise any issues relevant to his resentencing. The State avers that any issues related to his convictions are not before the court, that his convictions are final, and further that he failed to preserve any issues related to the jury's unanimity. As such, the State, argues that Mr. Brown is not entitled to the relief he seeks, and that his sentences should be affirmed.

The State is correct. Mr. Brown's instant appeal must be limited to matters of his resentencing. Though his sentences are pending, his convictions on both counts have already been affirmed and are final. Further, even if Mr. Brown's convictions were before this Court on the instant appeal, the issue of their constitutionality in light of his jury's non-unanimity would not yet be ripe for adjudication, given that *Ramos* has yet to be decided. We therefore decline Mr. Brown's request to issue what would in essence be a declaratory judgment certifying his eligibility to benefit from *Ramos* as a case pending on direct appeal at the time of the decision's yet-forthcoming rendition. Making such a declaration would amount to an advisory opinion, as the State avers.

**Appeal of "Miller" Resentencing**

*Scope of Appeal, Generally*

Mr. Brown's argument first asserts that his "*convictions* are not yet final" in light of his *Miller* resentencing (emphasis added). As discussed, his instant appeal is before us only by virtue of his resentencing, in light of the United States Supreme Court's decisions in *Miller v. Alabama* in 2012 and in *Montgomery v. Louisiana* in 2015, rendered subsequent his convictions' finalization in 1997.

*Miller* held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" *Miller v. Alabama*, 567 U.S. 460, 465, 132 S. Ct.

2455, 2460, 183 L. Ed. 2d 407 (2012). *Miller* did not necessarily forbid life-without-parole sentences for juveniles: it merely prohibited operation—in the case of a juvenile defendant—of any statutory scheme requiring that the defendant by virtue of his crime automatically be sentenced to life-without-parole, in that such operation robs discretion from the "sentencer" who the Eighth Amendment requires "must be able to consider the mitigating qualities of youth." *Id*.132 S.Ct. at 2459. Thus, now, any defendant who was under the age of majority at the time he committed a homicide is entitled to a sentencing hearing, otherwise known as a *"Miller* hearing*,"* for purposes of determining whether his sentence will be imposed with or without parole eligibility. *See State v. Allen*, 17-685 (La. App. 5 Cir. 5/16/18), 247 So.3d 179, 184, *writ denied*, 18-1042 (La. 11/5/18), 255 So.3d 998.

Following *Miller*, the United States Supreme Court clarified in *Montgomery v. Louisiana*, *supra*, that *Miller*'s holding applied retroactively to closed cases on collateral review. In recognizing that states could remedy *Miller* violations by rendering a juvenile parole eligibility, rather than imposing a new sentence, the *Montgomery* court explained:

> Giving *Miller* retroactive effect, moreover, **does *not* require States to relitigate sentences, let alone convictions, in every case where a juvenile received life without parole**. A State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them. Allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity—and who have since matured—will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment.

*Montgomery*, 136 S.Ct. at 736 (emphasis added).

The Louisiana Legislature moreover effectively codified *Miller* via enactment of Louisiana Code of Criminal Procedure Article 878.1. Under that article, any defendant serving a sentence of life-without-parole for a murder

committed while he was still a minor automatically became parole-eligible, absent the District Attorney's timely filing of a "Notice of Intent" to oppose such eligibility. The filing of such opposition requires that a "*Miller* hearing" be held. To be clear, though, Article 878.1 at no point entitles a defendant to *Miller* hearing, much less to re-litigation of his particular sentence or conviction—when his eligibility for parole is unopposed.

Consider for example *State v. Thompson*, wherein the Second Circuit heard the appeal of a defendant originally sentenced to life-without-parole for his conviction of first-degree murder, committed while he was. *State v. Thompson*, 51,674 (La. App. 2 Cir. 11/15/17), 245 So.3d 302, 307-08. In that case, the trial court never held a *Miller* hearing; rather, it simply vacated Thompson's former sentence and resentenced him to life-with-parole. Thompson argued that he was entitled to a hearing, and that forgoing one ran afoul of *Miller*, by depriving him of the opportunity to build a record in support of an alternative sentence, and of the right to have the particulars of his case reheard. The Second Circuit upheld the trial court's resentencing, however, and explained:

> … in the context of a *Miller* hearing, the only question for the court is eligibility for parole. [internal citations omitted]. Thompson received the most lenient sentence available under the current law, and the state was not required to relitigate the entire sentence.

*Id.* at 308. *See also State v. Olivier*, 17-724 (La. App. 4 Cir. 2/21/18), 238 So.3d 606, 609, *writ denied*, 18-0492 (La. 1/14/19), 261 So.3d 783 ("*Miller* does not require 'individualized' sentencing, only that parole eligibility is considered an option when sentencing youth offenders."). Like the defendant in *Thompson*, Mr. Brown now "enjoys" the most lenient sentence for his crime permissible under Louisiana law. Regardless, Mr. Brown, like any defendant resentenced pursuant to *Miller*, is entitled to appeal that resentencing as of right. *State v. Schane*, 17-0582 (La. 4/6/18), 239 So.3d 286 (*per curiam*), *order clarified on reh'g*, 17-0582 (La.

6/1/18), 244 So.3d 433. Such an appeal should be limited strictly to issues related to his sentencing, however.

As stated, this court already affirmed Mr. Brown's convictions and sentences on April 9, 1997, following his original appeal. The Louisiana Supreme Court denied writs on October 31, 1997. On that day, his convictions and sentences became final. *See* La. C.Cr.P. art. 922(D). Although Mr. Brown was resentenced pursuant to *Miller*, and now legitimately exercises his right to appeal that resentencing, his resentencing does not allow him the opportunity to challenge his previously affirmed convictions, as he asserts. *See e.g. State v. Robinson*, 47,427 (La. App. 2 Cir. 10/3/12), 105 So.3d 751, 756 ("Defendant's conviction became final in this matter November 23, 2011, when the Louisiana Supreme Court denied his writ application seeking review of his conviction. Therefore, defendant is no longer entitled to seek appellate review of issues concerning procedural irregularities relative to his conviction.").

Consider for example *State v. Anderson*, wherein a defendant had been convicted at trial for several crimes related to his molestation of a 14-year-old girl. *State v. Anderson*, 12-869 (La. App. 5 Cir. 6/27/13), 121 So. 3d 119, *writ denied*, 2013-1861 (La. 2/21/14), 133 So. 3d 679. Like Mr. Brown, the defendant in *Anderson* appealed to this court twice. On his first appeal, he challenged his convictions and sentences, arguing that his convictions violated the principles of double jeopardy, that the trial court erred in denying his Motion to Quash, and that his sentences were illegal and excessive. *Id.* at 123. We affirmed defendant's convictions, but vacated his sentences after finding that the trial court had failed to observe the 24–hour delay mandated by Louisiana Code of Criminal Procedure Article 873. *Id.*

On remand, the trial court reinstated the exact same sentence as before. Again, the defendant appealed his sentence as excessive. He also raised "several

claims of alleged trial error." *Id*. at 124. On that second appeal, however, we declined to consider those issues raised not related to his sentence, holding that by not raising them on his first appeal, the defendant had waived them. We explained:

> In defendant's original appeal, we reviewed the sufficiency of the evidence in this case and found that the evidence was more than sufficient to support defendant's convictions. Thus, we affirmed defendant's convictions, vacated defendant's sentences for failure to observe the 24–hour delay mandated by La.C.Cr.P. art. 873, and remanded this case for re-sentencing only. Any issues not raised in defendant's original appeal, which could have been raised, are considered waived. Because we have previously affirmed defendant's convictions in his original appeal, he may only challenge his re-sentencing in the instant appeal. The alleged trial errors in defendant's *pro se* assignments of error numbers one, two and three could have, and should have, been raised in defendant's original appeal. Accordingly, these issues are waived and not within our jurisdiction on appeal.

*Id.* (internal citations omitted).

Likewise, as discussed in the context of *Montgomery*, *supra*, *Thompson*, *supra*, and *Olivier*, *supra*, *Miller* does not require relitigation of sentences, much less of convictions. Rather, a defendant's parole eligibility is the only question to be answered in his *Miller* hearing, assuming one is necessary in the first place. Thus, relitigating any issues related to the validity of Mr. Brown's conviction , well exceed the scope of this appeal, which is, limited to issues related to Mr. Brown's sentencing.

***Error Patent Review***

Additionally, though Mr. Brown correctly asserts that this Court reviews errors "discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence" pursuant to La. C.Cr.P. art. 920(2), he is incorrect that such a review in the instant appeal would extend to his issues related to his convictions. "This Court routinely reviews the record for errors patent in accordance with La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975);

and *State v. Weiland*, 556 So.2d 175 (La. App. 5 Cir. 1990)*, regardless of whether defendant makes such a request." *State v. Shelby*, 18-185 (La. App. 5 Cir. 12/27/18), 263 So. 3d 1218, 1222. However, "La. C.Cr.P. art. 920 provides that the scope of appellate review extends only to an error designated in the assignment of errors, or an error patent." *State v. Robinson*, 08-25 (La. App. 5 Cir. 5/27/08), 986 So. 2d 716, 719, *writ denied*, 2008-1527 (La. 3/4/09), 3 So. 3d 470 (citing *State v. Overton*, 337 So.2d 1201, 1207 (La.1976)). Also, "[g]enerally, a defendant is not entitled to a second error patent review of the matters encompassed in the first appeal." *State v. Daniels*, 15-78 (La. App. 5 Cir. 9/23/15), 176 So. 3d 735, 741, *writ denied*, 2015-1997 (La. 11/29/16), 211 So. 3d 386 (citing *State v. Lobo*, 12–271 (La.App. 5 Cir. 12/18/12), 106 So.3d 1187, 1194, *writ denied*, 13–0151 (La.6/21/13), 118 So.3d 409.).

This Court conducted an error patent review of all issues related to Mr. Brown's convictions on his first appeal. Mr. Brown assigns no new errors relevant to his convictions now. He only asserts that one *may* exist should the *Ramos* case be decided in his favor. Thus, given that Mr. Brown assigns no new errors related to his convictions, and that any patent errors related to his conviction were scrutinized upon his first appeal, he thus is not entitled to a second error patent review of his convictions. *See e.g. State v. Taylor*, 01-452 (La. App. 5 Cir. 11/14/01), 802 So.2d 779, 783-84, *writ denied*, 01-3326 (La. 1/10/03), 834 So.2d 426; *State v. Alberto*, 95-540 (La. App. 5 Cir. 11/28/95), 665 So.2d 614, 625, *writs denied*, 95-1677 (La. 3/22/96), 669 So.2d 1222 and 96-0041 (La. 3/29/96), 670 So.2d 1237.

### Advisory Opinion

Finally, and most importantly, opining at this time as to whether or not Mr. Brown would benefit from a favorable ruling in *Ramos* would be an inappropriate, given that *Ramos* has not been decided at the time. Mr. Brown must, wait until

*Ramos* is decided, to adjudicate the issue of his convictions' constitutionality via collateral review.

In *Louisiana Federation of Teachers v. State*, 11-2226 (La. 7/2/12), 94 So.3d 760, the Louisiana Supreme Court stated:

> The jurisprudence of this court is well settled that, courts will not render advisory opinions . . . Cases submitted for adjudication must be justiciable, ripe for decision, and not brought prematurely . . . A court must refuse to entertain an action for a declaration of rights if the issue presented is academic, theoretical, or based on a contingency which may or may not arise . . . Further, a case is not ripe for review unless it raises more than a generalized, speculative fear of unconstitutional action.

*Id.* at 763 (citations omitted). Until *Ramos* is decided, we can, only render a ruling in accordance with established jurisprudence. That jurisprudence has consistently found that non-unanimous verdicts like Mr. Brown's do not, violate the constitution. That jurisprudence has largely followed the guidance of *Apodaca v. Oregon*, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972), wherein the United States Supreme Court, in a plurality decision, determined that the United States Constitution did not mandate unanimous jury verdicts in state court felony criminal trials. *State v. C.T.,* 18-650 (La. App. 5 Cir. 7/30/19), 279 So.3d 431, 441; *State v. Bonilla*, 15-529 (La. App. 5 Cir. 2/24/16), 186 So.3d 1242, 1257, *writ denied*, 16-0567 (La. 5/2/16), 206 So.3d 881, *cert. denied*, — U.S. —, 137 S.Ct. 239, 196 L.Ed.2d 183 (2016).

While it is true that on November 6, 2018, the voters of this State approved an amendment to La. Const. Art. 1, § 17, requiring unanimous verdicts in all cases requiring confinement necessarily at hard labor, that amendment took effect on January 1, 2019, and only applies to offenses committed on or after that date. *See* 2018 La. Act 722, § 1. The issue of non-unanimous jury verdicts rendered before the new constitutional amendment has been addressed numerous times by the Louisiana Supreme Court, this Court, and other appellate courts in this State, and

all have rejected the argument of its alleged unconstitutional nature. See *State v. Bertrand*, 08-2215 (La. 3/17/09), 6 So.3d 738, 743; *State v. Brooks*, 12-226 (La. App. 5 Cir. 10/30/12), 103 So.3d 608, 613-14, *writ denied*, 16 12-2478 (La. 4/19/13), 111 So. 3d 1030; *Bonilla, supra; State v. Barbour*, 09-1258 (La. App. 4 Cir. 3/24/10), 35 So.3d 1142, 1151, *writ denied*, 10-934 (La. 11/19/10), 49 So.3d 396, *cert. denied*, 562 U.S. 1217, 131 S.Ct. 1477, 179 L.Ed.2d 302 (2011); *State v. Baumberger*, 15-1056 (La. App. 3 Cir. 6/1/16), 200 So.3d 817, 832-34, *writ denied*, 16-1251 (La. 5/26/17), 221 So.3d 859, *cert. denied*, ——U.S. ——, 138 S.Ct. 392, 199 L.Ed.2d 290 (2017); and *State v. Blueford*, 48,823 (La. App. 2 Cir. 3/5/14), 137 So.3d 54, 69, *writ denied*, 14-0745 (La. 11/21/14), 160 So.3d 968, *cert. denied*, — U.S. ——, 135 S.Ct.1900, 191 L.Ed.2d 770 (2015). As an intermediate appellate court, this Court is obliged to follow the precedent established by the Louisiana Supreme Court. *State v. Thomas*, 10-220 (La. App. 5 Cir. 11/9/10), 54 So.3d 678, 686, *writs denied*, 10-2758 (La. 4/25/11), 62 So.3d 89 and 10-2752 (La. 5/20/11), 63 So.3d 974.

Therefore, Mr. Brown's arguments that the Supreme Court will find non-unanimous jury verdicts unconstitutional and will further apply its holding to those cases pending on direct appeal at the time it issues its ruling under *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987),[6] is mere speculation and abstract conjecture at this time. Until *Ramos* is decided, it would be inappropriate for this Court to opine at all as to how Mr. Brown's case might be affected by the decision, should it be favorable.

---

[6] The Supreme Court in *Griffith v. Kentucky* held, "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rules constitutes a 'clear break' with the past."

## Writ Application

In his writ application, Mr. Brown raises identical claims as he did in his application for post-conviction relief (APCR) filed below. He argues that the former jury scheme codified in La. Const. Art. 1, § 17 and La. C.Cr.P. art. 782 was unconstitutional and a violation of his Sixth Amendment and due process rights. He contends that it was motivated by racial discrimination and disparately employed, which affected the racial demographics of jury venires, which he can show through the testimony of expert witnesses. He avers that African-American jurors were more likely to cast an "empty vote, that is, a vote that has no impact on the outcome of the jury trial." He argues that he, in particular, was impacted by the racial discrimination inherent in the jury scheme as shown by his convictions handed down by a non-unanimous vote of 10/2. As the law in Louisiana regarding unanimity was recently amended, he urges that he is entitled to retroactive application of the newly enacted requirement of unanimity. Mr. Brown requests that this Court reverse his convictions and remand for a new trial.

Mr. Brown also suggests that the State allowed perjured testimony to go uncorrected at his trial when the State's witness, Charles Pitts, testified at trial contrary to a statement he previously gave to police.[7] Mr. Brown argues that this constitutes newly discovered evidence unknown to him at the time of trial and falls under *Brady* material. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). He asks that he be allowed to supplement this argument and points to the evidence proffered at his *Miller* hearing on July 2, 2018. In his writ application, Mr. Brown does not appear to specifically challenge the trial court's

---

[7] Mr. Pitts testified during defendant's trial that he received the safe from defendant. Due to his possession of the safe taken from the victim's home, he was charged with accessory to murder after the fact, to which he pled guilty.

ruling finding that his application was premature and that it no longer had jurisdiction in this matter.

As mentioned, on September 17, 2019, the Attorney General's Office filed an opposition to the writ, arguing that the trial court correctly declined to address the merits of Mr. Brown's premature application. It further asserts that this Court should deny Mr. Brown's writ since he argued the merits of his constitutional challenge without addressing the jurisdictional issue.

La. C.Cr.P. art. 924.1 states, "An application for post-conviction relief shall not be entertained if the petitioner may appeal the conviction and sentence which he seeks to challenge, or if an appeal is pending." The official revision comment of La. C.Cr.P. art. 924.1 states, "This article reaffirms the post-appellate nature of the procedure. Post-conviction relief is not designed to take the place of an appeal. The petitioner must first exhaust whatever appellate rights he has." La. C.Cr.P. art. 930.8 provides that applications for post-conviction relief, including requests for out-of-time appeals, must be filed within two years from the date that a defendant's conviction and sentence become final unless certain specific exceptions apply.[8]

---

[8] La. C.Cr.P. art. 930.8 provides, in pertinent part:

> No application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of Article 914 or 922, unless any of the following apply:
>
> > (1) The application alleges, and the petitioner proves or the state admits, that the facts upon which the claim is predicated were not known to the petitioner or his prior attorneys. Further, the petitioner shall prove that he exercised diligence in attempting to discover any post-conviction claims that may exist. "Diligence" for the purposes of this Article is a subjective inquiry that must take into account the circumstances of the petitioner. Those circumstances shall include but are not limited to the educational background of the petitioner, the petitioner's access to formally trained inmate counsel, the financial resources of the petitioner, the age of the petitioner, the mental abilities of the petitioner, or whether the interests of justice will be served by the consideration of new evidence. New facts discovered pursuant to this exception shall be submitted to the court within two years of discovery.
> >
> > (2) The claim asserted in the petition is based upon a final ruling of an appellate court establishing a theretofore unknown interpretation of constitutional law and petitioner establishes that this interpretation is retroactively applicable to his case, and the petition is filed within one year of the finality of such ruling.
> >
> > (3) The application would already be barred by the provisions of this Article, but the application is filed on or before October 1, 2001, and the date on which the application was filed is within three years after the judgment of conviction and sentence has become final.
> >
> > (4) The person asserting the claim has been sentenced to death.

Resentencing alone does not restart the time period for applying for post-conviction relief. However, the prescriptive period does not initially begin to run until the judgment of conviction and sentence have both become final under La. C.Cr.P. art. 914 or La. C.Cr.P. art. 922. *See State ex rel Frazier v. State*, 03-242 (La. 2/6/04), 868 So.2d 9 (*per curiam*); *State ex rel. Rushing v. Whitley*, 93-2722 (La. 11/13/95), 662 So.2d 464. As stated, the Louisiana Supreme Court has determined that when a defendant is resentenced under *Miller*, that defendant is entitled to appeal that resentencing. *Schane*, *supra*. Under La. C.Cr.P. art. 922, an appellate court's judgment becomes final if no application for rehearing has been made, when the timely application has been made or denied, or when a timely writ of review has been made and denied.

In the case of a defendant resentenced under *Miller*, a defendant may seek post-conviction relief two years from the time his sentence imposed upon resentencing becomes final, which occurs after he has first exhausted his appellate rights.[9] For instance, in *Terrick v. State*, 19-261 (La. App. 5 Cir. 6/24/19), 2019 WL 2588307 unpublished writ disposition, this Court held that the trial court erred in finding the defendant's Application for Post-Conviction Relief challenging the constitutionality of the grand jury proceedings against him was untimely under La. C.Cr.P. art. 930.8. Although the Mr. Brown was found guilty of second-degree murder in 2002, and his conviction and sentence affirmed on appeal in 2003, he was resentenced under *Miller* in 2017. As a result, this Court found that his APCR— filed within two years from the time his sentence imposed upon resentencing became final (fourteen days after the rendition of this Court's

---

[9] It remains unclear whether Mr. Brown will timely file an application for rehearing with this Court or seek any review by the supreme court after this Court renders its opinion in this matter and thus at what time his sentence will become final for purposes of tolling the time in which he can seek post-conviction relief.

judgment in his second appeal) — was timely filed and it remanded the matter for the trial court to consider relator's timely-filed APCR.

We therefore do not consider Mr. Brown's post-conviction claims set forth in his writ application at this time. The Courts of Appeal will review only issues which were submitted to the trial court and are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise. *See* Uniform Rules, Courts of Appeal, Rule 1-3. Here, the trial court did not consider the merits of Mr. Brown's application as it found that it was without jurisdiction and the application was premature due to the pending appeal. Thus, there is no judgment from the trial court granting or denying the relief sought. The trial court should be the first to consider Mr. Brown's claims on the merits and to decide if the State should be ordered to file any procedural objections or an answer on the merits if the claims can be dismissed without filing any answer upon the pleadings or if Mr. Brown's claims require an evidentiary hearing. *See* La. C.Cr.P. art. 927, *et seq*.

Because there is no meritorious ruling on the writ application for this Court to consider at this time, Mr. Brown's claims are not properly before this Court. We therefor deny his writ application without considering its merits, citing Rule 1-3, *supra*.

## Conclusion

Therefore, for the above reasons, we affirm the finality of Mr. Brown's convictions for second-degree murder and armed robbery, and reject his contention that his *Miller* resentencing entitles him to have his convictions relitigated. Further, we affirm his new life sentence with parole eligibility for his second degree murder conviction.

**AFFIRMED**

- 19 -

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**JANUARY 15, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 19-KA-370

### C/W 19-KH-374

## E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE HENRY G. SULLIVAN, JR. (DISTRICT JUDGE)
CHRISTOPHER A. ABERLE (APPELLANT)       TERRY M. BOUDREAUX (APPELLEE)       COLIN CLARK (APPELLEE)
THOMAS J. BUTLER (APPELLEE)             ANDREA F. LONG (APPELLEE)           GRANT L. WILLIS (APPELLEE)
J. TAYLOR GRAY (APPELLEE)

## MAILED

HON. JEFFREY M. LANDRY (APPELLEE)       HONORABLE PAUL D. CONNICK, JR.
ATTORNEY GENERAL                        (APPELLEE)
LOUISIANA DEPARTMENT OF JUSTICE         MATTHEW R. CLAUSS (APPELLEE)
1885 NORTH 3RD STREET                   ASSISTANT DISTRICT ATTORNEYS
6TH FLOOR, LIVINGSTON BUILDING          TWENTY-FOURTH JUDICIAL DISTRICT
BATON ROUGE, LA 70802                   200 DERBIGNY STREET
                                        GRETNA, LA 70053